**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ABDUVALI ISHANOV, | ) | |
| | ) | Case No. 3:26-cv-00492 |
| *Petitioner,* | ) | |
| | ) | District Judge Stephanie L. Haines |
| v. | ) | |
| | ) | |
| WARDEN, *et al.,* | ) | |
| | ) | |
| *Respondents.* | ) | |
| | ) | |
| | ) | |

**<u>MEMORANDUM OPINION</u>**

Abduvali Ishanov ("Petitioner") is an immigration detainee currently held at the Moshannon Valley Processing Center in Phillipsburg, Pennsylvania. Petitioner filed a Petition for Writ of Habeas Corpus, challenging his alleged mandatory detention under 8 U.S.C. § 1225(b) and that his detention has become unreasonably prolonged because his removal is not significantly likely in the foreseeable future. ECF No. 1. For the reasons that follow, the Petition will be **DENIED**.

## I.    BACKGROUND

Petitioner is a Kyrgyzstan national and citizen of Russia. ECF No. 1, ¶ 1. He entered the United States without inspection on July 14, 2022. *Id.* at ¶ 2; ECF No. 13-2, p. 3. On the same day, he was paroled into the United States and released on his own recognizance, with the condition that he attend immigration court hearings and report to Immigration and Customs Enforcement ("ICE") appointments as required. ECF No. 13-2, p. 3. On October 27, 2025, Petitioner reported to ICE's Philadelphia field office for a scheduled check-in appointment and was detained. *Id.* at p. 2.

On February 25, 2026, an immigration judge ("IJ") granted Petitioner pre-conclusion voluntary departure and ordered him to depart under safeguards on or before April 27, 2026. ECF No. 1, ¶ 26; ECF No. 13-3. The IJ also entered an alternate order of removal to Kyrgyzstan that would take effect if Petitioner failed to depart within the time allowed. ECF No. 13-3. The Government thereafter twice purported to extend Petitioner's voluntary departure deadline.[1] ECF No. 13-4, ¶¶ 16, 22. On March 20, 2026, Petitioner filed a Petition for Writ of Habeas Corpus and Respondents opposed the petition, which has been fully briefed. ECF Nos. 1, 9, 13, 15.

## II.    DISCUSSION

Petitioner principally argues that his detention is unlawful and violates his due process rights. ECF No. 1, ¶¶ 61-69, 100-101. Respondents counter that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). ECF No. 9, pp. 4-8. Respondents further argue that Petitioner's mandatory detention does not violate constitutional due process because it will only last for the duration of his removal proceedings. *Id.* at pp. 9-10. Since the Petition was filed, however, the maximum lawful period for Petitioner's voluntary departure has expired. The Court therefore first determines the statutory authority governing Petitioner's present detention and then addresses the effect of that change on the claims raised in the Petition.

### A.  Petitioner's pre-final order detention.

Respondents maintain that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2)(A). Consistent with its reasoning in *Calzado Diaz v. Noem*, however, the Court concludes that

---

[1] The record does not identify the dates on which the extensions were granted or the duration of the first extension. Those omissions, however, do not prevent the Court from determining the latest possible expiration date. The total period of pre-conclusion voluntary departure, including any extensions, could not exceed 120 days. *See* 8 C.F.R. § 1240.26(f). Thus, Petitioner's voluntary departure period expired no later than June 25, 2026.

Petitioner's pre-final order detention was governed by Section 1226(a), not Section 1225(b)(2)(A). *See* No. 3:25-cv-458, 2025 WL 3628480 (W.D. Pa. Dec. 15, 2025), *vacated as moot*, ECF No. 22 (Dec. 17, 2025) ("[T]he Court stresses that the general legal conclusions in the Court's Opinion at ECF No. 16 regarding the application of §§ 1225 and 1226 remain unchanged by this Memorandum Order.") But regardless of which statute governed his initial detention, he is no longer detained under either Section 1225 or Section 1226.

The IJ granted Petitioner pre-conclusion voluntary departure on February 25, 2026, and entered an alternate order of removal that would take effect if he failed to depart within the time allowed. Petitioner did not depart by that original April 27 deadline. The Government thereafter twice purported to extend that deadline and Respondents continue to characterize Petitioner as being detained under pre-final order authority based on those extensions. By contrast, Petitioner maintains that the present status of his removal order is unclear. ECF No. 15, ¶ 2. Yet despite each party's characterizations, the governing statutes and regulations determine the legal effect of the extensions and the finality of the alternate removal order.

For pre-conclusion voluntary departure, the total period allowed may not exceed 120 days. *See* 8 U.S.C. § 1229c(a)(2)(A); 8 C.F.R. § 1240.26(e). Although the Government may extend an initial voluntary departure period, "[i]n no event can the total period of time, including any extension," exceed that 120-day maximum. 8 C.F.R. § 1240.26(f). If the noncitizen overstays the voluntary departure period, the alternate order of removal becomes final. 8 C.F.R. § 1241.1(f). Further, the precise dates on which the Government issued the extensions and the duration of the first extension do not affect the latest possible expiration date. The Court afforded Respondents an opportunity through supplemental briefing to address the dates, duration, and

legal effect of the extensions. ECF No. 10. Respondents continue to maintain that Petitioner remains in pre-final order detention, but identify no statutory or regulatory authority permitting the Government to extend pre-conclusion voluntary departure beyond 120 days. Nor do they explain how a purported extension exceeding that maximum could prevent the alternate removal order from becoming final under Section 1241.1(f). Accordingly, because the IJ granted pre-conclusion voluntary departure on February 25, 2026, Petitioner's voluntary departure period could not lawfully continue beyond June 25, 2026. Whatever additional operational accommodation the Government may have purported to provide after that date could not enlarge the maximum period prescribed by statute and regulation or postpone the legal effect of its expiration.

Here, Petitioner failed to depart within that maximum lawful period. Accordingly, the alternate order of removal became administratively final upon his overstay, no later than June 26, 2026. *See* 8 C.F.R. § 1241.1(f). Because he is no longer detained under the pre-final order authority challenged in the Petition, the Court can no longer grant effective relief from that earlier custody. Any due process violations Petitioner suffered before his removal order became final would not alter the independent statutory authority governing his present post-final order detention. Accordingly, Petitioner's challenge to his pre-final order detention will be dismissed as moot.

**B. Petitioner's present detention under Section 1231.**

Under federal law, when a removal order becomes final, ICE has 90 days in which to remove a noncitizen from the United States and must detain the noncitizen during this period. *See* 8 U.S.C. §§ 1231(a)(1), (a)(2)(A). After this period expires, however, continued detention is

4

authorized only for so long as "removal is . . . reasonably foreseeable." *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). Because "[i]ndefinite, [or] permanent, detention" would raise serious constitutional concerns, *Zadvydas* construed detention beyond the 90-day period as authorized only for so long as reasonably necessary to accomplish removal, and recognized six months as a presumptively reasonable period. *Id.* at 700-701. Here, Petitioner's removal order became final no later than June 26, 2026, and Petitioner is within the 90-day mandatory detention period. The Court declines to adopt the approach taken by other District Courts that would permit *Zadvydas* claims to be raised prior to the expiration of six months of post-removal detention as that position seemingly nullifies the six-month presumption adopted by the Supreme Court. *See Talebinejad v. Otto*, No. 3:25-cv-329, 2026 WL 21537, at *1 n.1 (W.D. Pa. Jan. 5, 2026). Accordingly, to the extent the Petition may be construed to challenge Petitioner's detention under Section 1231, that claim will be **DENIED** without prejudice to refiling once the six-month post-removal detention period has elapsed.

## III.    CONCLUSION

For the reasons set forth herein, Petitioner's challenge to his pre-final order detention under 8 U.S.C. §§ 1225 or 1226 will be dismissed as moot. To the extent the Petition may be construed to challenge his current detention under 8 U.S.C. § 1231, the Petition will be **DENIED** without prejudice. An appropriate Order follows.

### ORDER

**AND NOW** this 31st day of July, 2026, for the reasons stated in the Memorandum Opinion, it is hereby ORDERED that:

1. To the extent the Petition for Writ of Habeas Corpus, ECF No. 1, challenges Petitioner's pre-final order detention under 8 U.S.C. §§ 1225 or 1226, the Petition is **DISMISSED** as moot.

2. To the extent the Petition may be construed to challenge Petitioner's present detention under 8 U.S.C. § 1231, the Petition is **DENIED** without prejudice to refiling once the six-month post-removal detention period has elapsed.

3. With no further action required by the Court at this time, the Clerk of Court shall mark this matter closed.

Stephanie L. Haines
United States District Judge

Cc/ECF: all counsel of record